**Marlyn MURPHY, Plaintiff and Appellant,**

v.

**PIERRE INDEPENDENT SCHOOL DISTRICT NO. 30–2, By and Through Its BOARD OF EDUCATION, Defendant and Appellee.**

No. 15277.

Supreme Court of South Dakota.

Considered on Briefs Nov. 20, 1986.

Decided April 1, 1987.

Rehearing Denied April 28, 1987.

A.P. Fuller of Amundson, Fuller & Delaney Lead, for plaintiff and appellant.

Charles Thompson of May, Adam, Gerdes & Thompson, Pierre, for defendant and appellee.

PER CURIAM.

### PROCEDURAL BACKGROUND/FACTS

Appellant, a nontenured teacher, brought an action against the Pierre School District (school district) for alleged breach of her teaching contract after she was terminated.[1] Both school district and appellant made motions for summary judgment. The trial court entered summary judgment for school district and denied appellant's motion for summary judgment. We affirm.

Appellant was first employed by school district for the 1978–79 school year to teach at the rural Rousseau school. In March of 1980 appellant was informed that her contract would not be renewed for the 1980–81 school year. Because she was a nontenured teacher she was not given the reason

---

1. Appellant's administrative appeal from her grievance was eventually abandoned. *See* SDCL 13–43–10.2.

for her nonrenewal.[2] Later, the school board revealed that the last two students who would have attended Rousseau school decided to transfer to school in town. Although the school remained an attendance center with zero students, the school district never closed it by any official action. *See* SDCL ch. 13–23 (Establishment and Discontinuance of Schools).

During the years she was employed by the school district, appellant requested transfers from Rousseau school. These transfers were denied.

At the time of appellant's nonrenewal and her requests for transfers, the school district had written policies for reductions-in-force (RIF) and for the transfer of teachers. *See* SDCL 13–10–11 (requiring school boards to establish written policies for staff reductions and recall). The transfer policy provided:

> Assignment of appointees to positions shall be made by the Superintendent. The Superintendent shall have the authority to transfer any employee from one position to another, providing such employee is eligible for the position to which the transfer is made, and providing such transfer does not involve demotion in rank or alteration of salary. Transfers involving alteration of rank or salary shall require approval of the Board of _____.

The RIF policy provided:

> In the event that it becomes necessary to reduce the number of teachers due to a substantial reduction in general fund revenues (provided that the district has exercised its influence and full taxing authorization, and that general fund monies have not been diverted to any other fund), program elimination or reduction, the consolidation of one or more attendance centers or school districts with another, substantial reduction in enrollment, or to the discontinuance of a particular type of teaching service, the

Board shall follow the procedures listed below in the order listed.

> 1. Efforts to bring about the required reduction through normal attrition, eg. (sic) resignations and retirement, will be exerted.
>
> 2. If normal attrition does not satisfy the need then teachers with less than full certification ... shall be released first.
>
> 3. *Teachers who have not achieved continuing contract status will be released next.*
>
> 4. (Not applicable)
>
> 5. In the application of # 2, 3, and 4 above, the principle of *seniority* will be utilized when the qualifications of two or more teachers are substantially equal. *Length of service within the current assignment will determine the order of release.* For purposes of this article and in descending order of priority, "qualifications" shall include evaluation records, college credits in the teaching area, recency of training, and recommendations of the administrative staff.
>
> 6. Reemployment priority will be *extended for a two year period* ...
>
> 7. (Not applicable)
>
> 8. (Not applicable)
>
> 9. *No specific position vacancy shall be considered to exist in the Pierre School District until all persons qualified for the specific position, and who have been laid off under this policy have been reemployed or have surrendered their right to reemployment.*
>
> 10. (Not applicable)
>
> 11. (Not applicable)

(Emphasis supplied)

## ISSUE

The issue is whether summary judgment was properly granted for the school district because no genuine issue of fact existed over whether the school district breached its contract with appellant. No dispute existed over the terms of the contract.

---

**2.** At the time of appellant's nonrenewal SDCL 13–43–9.1 (1975) did not require a school board to give a nontenured teacher reasons for a nonrenewal. The amended version of SDCL 13–43– 10.2 now requires that reasons be given. *See* 1984 S.D.Sess.Laws, ch. 126. This does not grant tenure and does not create a basis for challenging the nonrenewal.

## DECISION

We have interpreted SDCL 13–43–10.2 [3] as giving school boards broad decision-making authority to fire nontenured teachers without giving reasons. *Schaub v. Chamberlain Bd. of Educ.*, 339 N.W.2d 307 (S.D. 1983); *Coull v. Spearfish Bd. of Educ.*, 340 N.W.2d 695 (S.D.1983); *see also Fries v. Wessington School Dist.*, 307 N.W.2d 875 (S.D.1981) (Department of Labor has limited authority to order temporary reinstatement to nontenured teachers); *Moran v. Rapid City Area School Dist.*, 281 N.W.2d 595 (S.D.1979) (termination of tenured teacher reviewed under arbitrary, capricious, and abuse of discretion standard of review). In view of this broad authority it would be inconsistent to say that school boards' RIF policies, as they are required to be adopted by SDCL 13–10–11, should be interpreted to limit a board's authority not to renew the contract of a single nontenured teacher, whatever the reason.

Consequently, even though the school district's RIF policy in sections 3, 5, 6, and 9 appears to give nontenured teachers some priority in reducing staff, this RIF policy cannot override SDCL 13–43–10.2 and the stronger interest it serves in giving school boards broad discretion to terminate nontenured teachers. The school district simply was not compelled to adopt a RIF policy under SDCL 13–10–11 that accommodated nontenured teachers. *Cf. Burke v. Lead-Deadwood School Dist.*, 347 N.W.2d 343 (S.D.1984) (RIF policy applied to continuing contract administrative employee).

In effect, we are reconciling SDCL 13–43–10.2 (nontenured teachers) with SDCL 13–10–11 (RIF policies) and holding that a school board's broad discretion in terminating nontenured teachers overrides any implication that the RIF policies required by SDCL 13–10–11 should apply to such teachers. Consequently, the school district's RIF policy as a matter of law was inapplicable and appellant had no rights under it,

whatever the status of the Rousseau school was.

Nor was there any fact issue about whether school district violated its transfer policy. The policy vests the district's superintendent with authority to transfer teachers provided certain conditions are met. But the policy, as a matter of law, does not give teachers a right to a transfer.

The trial court properly granted summary judgment because, as a matter of law, the school district's RIF policy was inapplicable; further the transfer policy did not give teachers a right to transfers. The trial court's decision is affirmed.

FOSHEIM, Retired J., participating.

DUNN, Retired J., for WUEST, C.J., disqualified.

MILLER, J., not having been a member of the court at the time this action was submitted to the court, did not participate.

---

**3.** SDCL 13–43–10.2 provides for the method of nonrenewing teachers in their first or second year of employment; although it now requires

that reasons be given, a school board's decision cannot be challenged on these grounds. *See also* fn. 2.